# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LISA RANIERI and MEGAN CORNELIUS, individually and on behalf of a class of similarly situated persons | § § § § § | |
| v. | § | CIVIL ACTION NO. 3:17-CV-0691-S |
| ADVOCARE INTERNATIONAL, L.P. | § § § § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant AdvoCare International, L.P.'s ("Defendant" or "AdvoCare") Motion to Dismiss [ECF No. 57]. For the reasons set forth below, the Court grants the Motion.

### I. BACKGROUND

This class action lawsuit arises out of allegations that AdvoCare, a company that distributes health and nutritional products, is a pyramid scheme. The participants in AdvoCare's system are called "Distributors." Am. Compl. ¶ 1. Plaintiffs Lisa Ranieri and Megan Cornelius ("Plaintiffs") are former Distributors. *Id.* ¶¶ 194, 198. Plaintiffs joined AdvoCare in 2007 and 2014, respectively, and both were terminated in 2016. *Id.* ¶¶ 194, 197-201. "At all times that Plaintiffs were associated with AdvoCare, the AdvoCare 'Distributor Agreement' set forth the terms and conditions of the contractual relationship between AdvoCare and its Distributors." *Id.* ¶ 24. The Distributor Agreement and AdvoCare's "Policies, Procedures and the Compensation Plan" comprised the contract between Distributors and AdvoCare. *Id.* ¶¶ 24-25.

Distributors must pay initial and annual fees to access AdvoCare's Compensation Plan. *Id.* ¶ 37. Through its bonuses, the Compensation Plan allegedly "encourages and, as a practical matter,

requires Distributors to pay AdvoCare more money through the purchase of products to receive compensation." *Id.* Plaintiffs allege that Distributors are unable to make any significant retail sales and that AdvoCare makes extremely few retail sales. *Id.* ¶ 38. Plaintiffs contend that "the key to succeeding in AdvoCare is recruiting," not selling product. *Id.* ¶¶ 90, 103. According to Plaintiffs, AdvoCare uses commissions, bonuses, and the prospect of advancement to encourage Distributors to recruit and "inventory load."[1] *Id.* ¶¶ 50-89.

"[L]ike a classic pyramid scheme," Plaintiffs allege, "AdvoCare pays Distributors with other Distributors' money." *Id.* ¶ 102. According to Plaintiffs, the "overwhelming majority" of money made by AdvoCare during the relevant time came from Distributors. *Id.* Ergo, the "overwhelming majority" of the money AdvoCare used to pay Distributors must have come from other Distributors. *Id.* Due to this compensation structure, Plaintiffs allege that "[v]ery few Distributors make any money at all from their participation in AdvoCare, and the vast majority lose money." *Id.* ¶ 135.

In the Amended Complaint, Plaintiffs refer to certain individuals formerly named as defendants in this case as "Scheme Beneficiaries."[2] *Id.* ¶ 149. Plaintiffs allege that these individuals are in the top 2% of Distributors, "actively participate in AdvoCare's pyramid scheme," and "profit from the Compensation Plan at the expense of the vast majority of Distributors." *Id.* Plaintiffs contend that these individuals "seek to intentionally mislead people" to recruit new Distributors and to ensure that current Distributors continue participating in the AdvoCare system, "which requires the purchasing of product and recruiting, all to the benefit of AdvoCare and the Scheme Beneficiaries." *Id.* ¶ 179. "It is the continued hard work of the

---

[1] "Inventory loading" refers to Distributors purchasing more product than they can sell at retail or purchasing product that they otherwise would not. Am. Compl. ¶ 49.
[2] Plaintiffs also name one new individual, Tori Cuevas, as a Scheme Beneficiary. *Id.* ¶ 11.

2

Distributors at recruiting that will affect the ability of AdvoCare and the Scheme Beneficiaries to continue to reap financial rewards." *Id.*

According to Plaintiffs, the so-called Scheme Beneficiaries "exist by design." *Id.* ¶ 188. "Likely because of its dependence on the Scheme Beneficiaries' maintenance of their downlines," AdvoCare allegedly "allows the Scheme Beneficiaries to manipulate the Compensation Plan." *Id.* ¶ 190. Plaintiffs allege that certain of these individuals wrongfully transferred money to downline Distributors, practiced inventory loading, and sold products through online retailers in violation of AdvoCare's policies. *Id.* ¶¶ 190-91, 193.

Plaintiffs, individually and on behalf of a putative class of similarly situated persons, initially sued AdvoCare on five counts and certain individual defendants on three counts. AdvoCare and the individual defendants moved to dismiss Plaintiffs' claims, and the Court granted in part and denied in part both motions on August 27, 2018. *See* ECF No. 48. On September 11, 2018, Plaintiffs dismissed the individual defendants and moved for leave to amend their claims against AdvoCare. *See* ECF No. 51. On September 12, 2018, the Court granted that motion. *See* ECF No. 52. Plaintiffs now bring two causes of action against AdvoCare. First, they seek a declaratory judgment declaring the arbitration provision in their contracts unenforceable.[3] Second, they allege that AdvoCare engaged in racketeering activity in violation of §§ 1961(5) and 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Defendant moves to dismiss only the RICO cause of action.

---

[3] On December 27, 2017, an arbitrator determined that Plaintiffs' claims are not arbitrable, but the parties disagree as to whether this decision will apply to the future class. AdvoCare states in its Motion that it "is not moving to dismiss that claim at this time." Mot. 3. Therefore, the Court will not consider the declaratory judgment claim.

## II. LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

## III. ANALYSIS

"RICO makes it unlawful for 'any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015) (quoting 18 U.S.C. § 1962(c)). Defendant challenges whether Plaintiffs have sufficiently pleaded the existence of an enterprise. "RICO defines an enterprise as 'any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity.'" *Id.* (quoting 18 U.S.C. § 1961(4)). "This enumeration of included enterprises is obviously broad, encompassing '*any* . . . group of individuals associated in fact.'" *Boyle v. United States*, 556 U.S. 938, 944 (2009) (alteration in original) (quoting 18 U.S.C. § 1961(4)).

Here, Plaintiffs do not allege that the enterprise is a legal entity. Rather, they allege that "AdvoCare's network of independent Distributors" constitutes an association-in-fact enterprise. Am. Compl. ¶ 219. An association-in-fact enterprise must have three structural features: (1) purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit associates to pursue the enterprise's purpose. *Boyle*, 556 U.S. at 946. Defendant challenges the first element, arguing that the members of the alleged enterprise do not share a common purpose. Defendant also contends that the enterprise is not sufficiently distinct from Defendant, the RICO "person," and that the enterprise's purported purpose is identical to the alleged racketeering activity.

"[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Id.* at 948. The members of an enterprise must share "truly common interests, rather than parallel interests." *Armendariz v. Chowaiki*, EP-14-CV-451-KC, 2016 WL 8856919,

5

at *7 (W.D. Tex. Mar. 31, 2016) (quoting *Browning v. Flexsteel Indus., Inc.*, 955 F. Supp. 2d 900, 913 (N.D. Ind. 2013)). In the instant case, Plaintiffs claim that all Distributors share a common interest: "to make money by selling AdvoCare products, recruiting new Distributors, and growing the network of Distributors." Resp. 6 (citing Am. Compl. ¶¶ 36, 38, 44-98). For two reasons, the Court finds that the interest alleged by Plaintiffs—making money—does not satisfy the common purpose requirement.

First, although "[a] *shared* 'desire to make money' is sufficient to satisfy RICO's common purpose requirement," the Amended Complaint alleges at most that Distributors had parallel interests. *Allstate Ins. Co. v. Plambeck*, No. 3:08-CV-388-M, 2014 WL 1303000, at *3 (N.D. Tex. Mar. 31, 2014) (emphasis added) (citation omitted). In *Plambeck*, the interest in making money was a common interest because "the members were not at cross-purposes or acting independently but were, instead, an interdependent and coordinated association that existed to perpetuate the enterprise and its profitability." *Id.* Here, by contrast, Plaintiffs' allegations establish only that the Scheme Beneficiaries might have a shared interest in making money. Plaintiffs allege that "[f]rom their vantage point atop the distribution network, the Scheme Beneficiaries know that the distribution network satisfies all the criteria for being a pyramid scheme," "that little money comes into the scheme other than money paid by Distributors," and "that all but a very few Distributors lose money from their participation in the scheme." Am. Compl. ¶ 189.

Thus, like the enterprise members in *Plambeck*, it is possible that the Scheme Beneficiaries shared a desire to make money in order to "perpetuate the enterprise and its profitability." 2014 WL 1303000, at *3. But the Scheme Beneficiaries are at cross-purposes with the other members of the alleged enterprise, as the Scheme Beneficiaries "profit from the Compensation Plan *at the expense of the vast majority of Distributors*." Am. Compl. ¶ 149 (emphasis added); *see also id.*

¶ 141 ("Because AdvoCare pays the people at the top of the pyramid exorbitant incomes and because little non-Distributor money comes into the scheme to pay Distributors, the Distributors at the bottom of the pyramid must lose money.").

Based on Plaintiff's allegations, lower-level Distributors could not have shared a purpose with higher-level Distributors, even though most Distributors undoubtedly had a parallel interest in making money. While the Fifth Circuit has not addressed the issue, other "courts . . . have declined to include victims as part of the enterprise because victims could hardly have shared a common purpose with a[n] association designed to defraud them." *Roberts v. C.R. Eng., Inc.*, 318 F.R.D. 457, 487 (D. Utah 2017) (collecting cases). This principle is relevant in a scheme like the one alleged by Plaintiffs, where certain individuals purportedly share an interest in maximizing their profits at the expense of the majority of the members of the alleged enterprise. Plaintiffs explicitly allege that the Scheme Beneficiaries "lure in new Distributors" under false pretenses. Am. Compl. ¶ 138; *see also id.* ¶ 140 ("'You catch people in a bad spot who maybe have hope that this could be a way for them to pay for their credit card and their kids, and you exploit them.'" (quoting Mina Kimes, *Drew Brees Has a Dream He'd Like to Sell You*, ESPN (Mar. 15, 2016), http://www.espn.com/espn/feature/story/_/id/14972197). In light of these allegations, it defies logic to argue that new and lower-level Distributors have interests in common with the Scheme Beneficiaries and other higher-level Distributors.

In fact, if all Distributors possessed the knowledge Plaintiffs attribute to the Scheme Beneficiaries, the enterprise likely would crumble because the participants would realize that they had no realistic chance of achieving their purpose—earning money. *See, e.g.*, Am. Compl. ¶ 10 ("AdvoCare paid 71.5% of its Distributors *$0* in 2015."); *id.* ¶ 11 ("The only people who make

7

money from the AdvoCare pyramid scheme are the very few at the top of the pyramid. These few . . . have gotten rich from AdvoCare's defrauding the 90+% of Distributors who lose money.").

Second, even if all Distributors' interest in making money could be considered shared, rather than parallel, "[a] plaintiff cannot establish a common purpose where nothing in the complaint 'suggests that the associates of the alleged enterprise have come together' or engaged in 'common, coordinated efforts.'" *Armendariz*, 2016 WL 8856919, at *7 (quoting *Browning*, 955 F. Supp. 2d at 913); *see also Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 400 (7th Cir. 2009) ("These allegations do not . . . suggest a group of persons acting together for a common purpose or course of conduct."); *Labaty v. UWT, Inc.*, 121 F. Supp. 3d 721, 752 (W.D. Tex. 2015) (finding that members of enterprise must "come together to pursue by common, coordinated efforts what they could not do on their own" (citation omitted)). Plaintiffs do not allege that the majority of the Distributors came together or engaged in common, coordinated efforts. Plaintiffs contend that "[t]he similarity of the statements made by *the Scheme Beneficiaries* indicates a collusive effort to promote the AdvoCare scheme," but do not explain how other Distributors worked together to achieve a common purpose. Am. Compl. ¶ 152 (emphasis added). At most, Plaintiffs allege that Distributors relied on recruiting new Distributors into their downlines to make money. However, the Amended Complaint does not contain sufficient allegations that Distributors communicated, coordinated, or otherwise worked together to achieve a common purpose post-recruitment.

For the foregoing reasons, the Court finds that Plaintiffs have not plausibly alleged the first element of an association-in-fact enterprise—common purpose—and thus grants Defendant's Motion to Dismiss. *See Whelan v. Winchester Prod. Co.*, 319 F.3d 225, 230 (5th Cir. 2003) (holding that a § 1962(c) claim cannot succeed if the plaintiff fails to demonstrate an enterprise). Because Plaintiffs have not alleged an enterprise, the Court will not consider Defendant's

remaining arguments—that the alleged enterprise is not distinct from AdvoCare, the RICO person, and that Plaintiffs did not plead an enterprise distinct from the alleged wrongdoing.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion to Dismiss Plaintiffs' RICO claim. The Court grants Plaintiffs' request for leave to amend. Plaintiffs must file an amended complaint by no later than July 31, 2019. If a proposed amended complaint is not filed by this date, Plaintiffs' RICO claim will be dismissed with prejudice.

**SO ORDERED.**

SIGNED July 16, 2019.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**